***********
Based upon review of the competent evidence of record with references to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 STIPULATIONS
1. The employee-employer relationship existed at the time of the alleged injury.
2. The date of the alleged injury is November 7, 2002.
3. Kelly Services was the duly-qualified self-insured employer at the time of the alleged injury, with RSKCO. as the servicing agent.
4. The parties are subject to the North Carolina Workers' Compensation Act.
5. Plaintiff's average weekly wage was $300.00.
6. Plaintiff has been treated by Dr. John C. Cheek with Smithfield Urgent Medical Care.
7. The following exhibits were entered into the evidence of record by the parties at the hearing before the Deputy Commissioner:
a. Stipulated Exhibit 1 — medical records
b. Stipulated Exhibit 2 — nurse's daily logs
 ***********
Based upon all the competent evidence of record, the Full Commission finds as fact and concludes as a matter of law the following:
 FINDINGS OF FACT
1. Plaintiff was fifty-five years old at the time of the hearing before the Deputy Commissioner who worked as an assembler for Kelly Services for approximately one week. Plaintiff's primary responsibilities with Kelly Services as a temporary employee with Channel Master included standing eight hours per day, building boxes, packing satellite dishes, and placing labels on the boxes.
2. On November 7, 2002, plaintiff alleges that she was placing labels on unassembled boxes and then moving them from one location to another. Plaintiff alleges that after she placed the labels on the boxes, she made a high stack of unassembled boxes on a table or a flat. Plaintiff alleges that her back popped when she reached up to place an unassembled box on a stack of unassembled boxes at approximately 3:00 p.m. Plaintiff's usual day ended at 3:30 p.m. However, plaintiff continued to work after her alleged injury. In fact, plaintiff worked forty-five minutes past the end of her shift until 4:15 p.m. Plaintiff did not tell anyone with whom she was working about her alleged injury. Plaintiff did not tell her immediate supervisor at Channel Master about her alleged injury. Plaintiff also did not report her alleged injury to her supervisor with Kelly Services. Additionally, plaintiff did not report a back injury to the plant nurse on November 7, 2002.
3. On Friday, November 8, 2002, plaintiff returned to her temporary employment with Channel Master and was able to perform her assembler job. Plaintiff did not report an injury on November 8, 2002.
4. On Monday, November 11, 2002, plaintiff suffered from overall body aches and pain. Plaintiff visited the plant nurse at Channel Master and asked for a pain reliever and received a back brace. Plaintiff told her supervisor with Channel Master that her back was bothering her, but did not inform him of a work-related injury. At first, plaintiff thought that her lower back pain was due to a problem with her kidneys.
5. Ms. Charlotte Eichorn with Kelly Services performed plaintiff's orientation on how to report accidents at Channel Master. Ms. Eichorn instructed plaintiff to report any workplace accident immediately to Kelly and to then see the plant nurse. Plaintiff participated in the orientation and received the Kelly Services Handbook.
6. Plaintiff's duties included assembling one box at a time and passing the box down the assembly line. Ms. Eichorn, plaintiff's on-site supervisor with Kelly Services at Channel Master, worked at Channel Master for eight months and never saw anyone stack boxes above their head.
7. On November 11, 2002, plaintiff presented to Ms. Rebecca Whitley, Channel Master's plant nurse, with complaints of right lower back pain. Plaintiff informed Ms. Whitley that the pain began on Saturday, which would have been November 9, 2002. Ms. Whitley did not receive a history from plaintiff of an incident on Friday, November 8, 2002 nor did she receive a history of a Thursday, November 7, 2002 injury stacking boxes.
8. On November 13, 2003, plaintiff returned to Ms. Whitley and complained of aches and pains all over. On November 14, 2002, plaintiff returned to Ms. Whitley with continued complaints of pain. Plaintiff never reported to the plant nurse that her back pain was due to any specific incident that happened at work.
9. A Form 19 was not completed in this case until January 27, 2003, after plaintiff filed a Form 18, because plaintiff never reported an injury to Ms. Eichorn.
10. On November 15, 2002, plaintiff received her first medical treatment for her back condition when she self-referred to Dr. John C. Cheek with complaints of back pain. Plaintiff provided Dr. Cheek with a history of lower back pain beginning approximately six days before, which radiated into the right leg. Plaintiff provided Dr. Cheek with no specific incident that caused her back pain. Plaintiff had x-rays, which had been done the day before and showed mild degenerative changes with some nerve root impingement.
11. Dr. Cheek's November 15, 2002 note, which was partially prepared by his technician, contained the notation "NKI", which means no known injury. Also, Dr. Cheek did not write down that plaintiff had been injured a certain way. Dr. Cheek typically notes the cause of an injury in his office. Dr. Cheek did not indicate in his November 15, 2002 note a lifting event or any specific event which caused plaintiff an injury. After his examination of plaintiff, Dr. Cheek determined that plaintiff suffered from low back pain.
12. Dr. Cheek felt plaintiff had a nerve root impingement and prescribed Percocet, which prevented her from being able to work.
13. Plaintiff saw Dr. Cheek on December 27, 2002 for migraine pain.
14. On January 3, 2003, plaintiff returned to see Dr. Cheek who prescribed Tylenol 3.
15. Dr. Cheek ordered an x-ray at plaintiff's February 3, 2003 visit and found no change of condition.
16. Dr. Cheek was unable to testify as to whether the back condition for which he treated plaintiff was related to a specific incident on November 7, 2002.
17. There is insufficient medical evidence of record to causally relate plaintiff's back condition to any incident which may have occurred on November 7, 2002.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident or a specific traumatic incident that arose out of and in the course of her employment on November 7, 2002. N.C. Gen. Stat. § 97-2(6).
2. Therefore, plaintiff is not entitled to any workers' compensation benefits for an alleged injury by accident or specific traumatic incident. Id.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim must be and is hereby DENIED.
2. Each side shall pay its own costs.
This the 4th day of November 2004
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER
LKM/mlb